**Nos. 25-1169 & 25-1170**

**In the**
**United States Court of Appeals for the First Circuit**

O. DOE, *ET AL.*, *Plaintiffs-Appellees*,
v.
DONALD J. TRUMP, *ET AL.*, *Defendants-Appellants*.

STATE OF NEW JERSEY, *ET AL.*, *Plaintiffs-Appellees*,
v.
DONALD J. TRUMP, *ET AL.*, *Defendants-Appellants*.

**On Appeal from the United States District Court for**
**the District of Massachusetts**

Brief *Amicus Curiae* of
America's Future,
Gun Owners of America, Inc., Gun Owners Foundation,
Citizens United,
Leadership Institute,
U.S. Constitutional Rights Legal Defense Fund, and
Conservative Legal Defense and Education Fund
in Support of Defendants-Appellants and Reversal

JEFFREY C. TUOMALA
  114 Creekside Lane
  Winchester, VA  22602

MICHAEL BOOS
  CITIZENS UNITED
  1006 Pennsylvania Ave. SE
  Washington, DC  20003

WILLIAM J. OLSON*
JEREMIAH L. MORGAN
  WILLIAM J. OLSON, P.C.
  370 Maple Avenue West, Suite 4
  Vienna, VA  22180-5615
  (703) 356-5070
*Attorney of Record
*Attorneys for Amici Curiae*
April 28, 2025

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, *amici* do not have parent corporations, they are not publicly traded companies, and no publicly held corporation owns 10% or more of their stocks.

# TABLE OF CONTENTS

Page

DISCLOSURE STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

INTEREST OF *AMICI CURIAE* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

ARGUMENT

I.    THE DECISION BELOW WAS BASED ON LEGAL ERRORS. . . . . . . . . . . . . . . . . 6

II.   THE DISTRICT COURT'S ASSERTION THAT PLAINTIFFS' VIEW OF
      *WONG KIM ARK* HAS BEEN APPLIED REPEATEDLY IS ERRONEOUS . . . . . . . 14

III.  "BIRTHRIGHT CITIZENSHIP" VIOLATES THE TEXT AND THE ORIGINAL
      INTENT OF THE FOURTEENTH AMENDMENT . . . . . . . . . . . . . . . . . . . . . . . . . 16

IV.   THE VIEW THAT "BIRTHRIGHT CITIZENSHIP" SHOULD BE HANDED
      OUT IRRESPECTIVE OF ALLEGIANCE HAS BIZARRE RESULTS. . . . . . . . . . . . 22

V.    THE CASE AGAINST PRESIDENT TRUMP SHOULD BE DISMISSED. . . . . . . . . 25

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

APPENDIX:  FEDERAL COURT INJUNCTIONS AGAINST THE TRUMP
      ADMINISTRATION

# TABLE OF AUTHORITIES

Page

U.S. CONSTITUTION

Article III, Sec. 3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
Article IV, Sec. 2, cl. 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
Amendment XIV. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, *passim*

STATUTES

Civil Rights Act of 1866, 14 *Stat.* 27 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
Indian Citizenship Act of 1924, 43 *Stat.* 253 . . . . . . . . . . . . . . . . . . . . . . . . 23

CASES

*Carlisle v. United States*, 83 U.S. 147 (1873) . . . . . . . . . . . . . . . . . . . . . . . 13
*Dred Scott v. Sandford,* 60 U.S. 393 (1857) . . . . . . . . . . . . . . . . . . . 6, 16, 19
*Elk v. Wilkins*, 112 U.S. 94 (1884) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10
*Franklin v. Massachusetts*, 505 U.S. 788 (1992). . . . . . . . . . . . . . . . . . . . . . 26
*Immigration & Naturalization Serv. v. Rios-Pineda*, 471 U.S. 444 (1985) . . . . . 14
*Kawakita v. United States*, 343 U.S. 717 (1952) . . . . . . . . . . . . . . . . . . . . . 16
*Kendall v. United States*, 37 U.S. 524 (1838) . . . . . . . . . . . . . . . . . . . . . 26, 27
*Korematsu v. United States,* 323 U.S. 214 (1944). . . . . . . . . . . . . . . . . . . . . . 6
*Marbury v. Madison*, 5 U.S. 137 (1803) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
*Minor v. Happersett*, 88 U.S. 162 (1875) . . . . . . . . . . . . . . . . . . . . . . . . 9, 10
*Mississippi v. Johnson*, 71 U.S. 475 (1867). . . . . . . . . . . . . . . . . . . . . . . . . . 27
*Nixon v. Fitzgerald*, 457 U.S. 731 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
*Roe v. Wade,* 410 U.S. 113 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
*Slaughter-House Cases*, 83 U.S. 36 (1873) . . . . . . . . . . . . . . . . . . . . . . . . 8, 10
*United States v. Wong Kim Ark*, 169 U.S. 649 (1898). . . . . . . . . . . . . . 3, *passim*
*Van Ness v. Pacard*, 27 U.S. 137 (1829) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

MISCELLANEOUS

R. Berger, Government by the Judiciary: The Transformation of the
    Fourteenth Amendment (Liberty Fund: 1997). . . . . . . . . . . . . . . . . . . . . . 17
D. Cole, *et al.*, "24 Democratic states and cities sue over Trump's bid to
    end birthright citizenship," *CNN* (Jan. 21, 2025) . . . . . . . . . . . . . . . . . . . . 4
Congressional Globe, 39th Cong., 1st Sess., 2890-97. . . . . . . . . . . . . . . . 20, 21
Declaration of Independence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

iii

J. Eastman, "The Significance of 'Domicile' in *Wong Kim Ark*,"
22 CHAP. L. REV. 301, 308-09 (Spring 2019) . . . . . . . . . . . . . . . . . . . . 12, 13

I. Egrikavuk, "Birth tourism in U.S. on the rise for Turkish parents,"
*Hurriyet Daily News* (Mar. 12, 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

E. Erler, The Founders on Citizenship and Immigration
(Claremont Inst: 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

J. Feere, "Birthright Citizenship in the United States: A Global Comparison,"
*Center for Immigration Studies* (Aug. 31, 2010) . . . . . . . . . . . . . . . . . . 25

D. Iriekpen, "Citizenship Rights: American Agitations Threaten a Nigerian
Practice," *This Day* (Aug. 16, 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

J. Madison, "Citizenship," (May 22, 1789) . . . . . . . . . . . . . . . . . . . . . . . . . . 15

N. Nnorom, "Birthright citizenship: Nigerians in diaspora kick, say Trump's
action illegal," *Vanguard* (Jan. 23, 2025) . . . . . . . . . . . . . . . . . . . . . . . 25

Office of the Inspector General, "A Review of the FBI's Handling of
Intelligence Information Prior to the September 11 Attacks,"
(Nov. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

W. Olson & J. Tuomala, "Citizenship by Accident of Birth: the Bogus
Theory of Birthright Citizenship," *America's Future* (Mar. 2025). . . . . . 12

K. Richburg, "For many pregnant Chinese, a U.S. passport for baby remains
a powerful lure," *Washington Post* (July 18, 2010) . . . . . . . . . . . . . . . . 25

J. Tuomala, "*Marbury v. Madison* and the Foundation of Law,"
4 LIBERTY U. L. REV. 297 (Spring 2010) . . . . . . . . . . . . . . . . . . . . . . . . 15

U.S. Department of State, "State Sponsors of Terrorism". . . . . . . . . . . . . . . . . 8

U.S. Department of Justice, "Fact Sheet: Prosecuting and Detaining Terror
Suspects in the U.S. Criminal Justice System" (June 9, 2009) . . . . . . . . 25

U.S. Department of Justice, "Two sent to prison for roles in cartel-linked human
smuggling scheme" (Oct. 30, 2024) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

World Population Review, "Countries with Birthright Citizenship 2025". . . . . . 4

iv

## INTEREST OF *AMICI CURIAE*[1]

The *amici* herein, America's Future, Gun Owners of America, Inc., Gun Owners Foundation, Citizens United, Leadership Institute, U.S. Constitutional Rights Legal Defense Fund, and Conservative Legal Defense and Education Fund are nonprofit organizations exempt from federal income taxation under IRC sections 501(c)(3) or 501(c)(4) whose activities include filing *amicus* briefs in important constitutional and public policy cases.

## STATEMENT OF THE CASE

On January 20, 2025, President Donald Trump issued an executive order entitled, "Protecting the Meaning and Value of American Citizenship"[2] ("the Order" or "EO"). The Order noted that being born on American soil has never automatically conferred American citizenship. The Order stated that "[t]he Fourteenth Amendment has always excluded from birthright citizenship persons who were born in the United States but not 'subject to the jurisdiction thereof.'" *Id.* Accordingly, the Order contained a narrowly defined directive to federal agencies that federal agencies are not to consider a person born on U.S. soil a

---

[1]  The parties have consented to the filing of this brief.  No party's counsel authored the brief in whole or in part.  No party or party's counsel contributed money that was intended to fund preparing or submitting the brief.  No person other than these *amici curiae*, their members, or their counsel contributed money that was intended to fund preparing or submitting this brief.

[2]  The White House, "Protecting the Meaning and Value of American Citizenship" (Jan. 20, 2025).

citizen when, "at the time of said person's birth," the **father** "was not a United States citizen or lawful permanent resident..." and:

> "when that person's **mother**" was:
> (1) "**unlawfully present** in the United States" ... or
> (2) ... when [the mother's presence] ... was **lawful but temporary** (such as, but not limited to, visiting the United States under the auspices of the Visa Waiver Program or visiting on a student, work, or tourist visa).... [*Id.* (emphasis added).]

The State of New Jersey's challenge was filed the day after the EO was issued, but not in the District of New Jersey, where one would expect the State of New Jersey would file. Rather, suit was filed in the District of Massachusetts. It would be naive to believe that this curious choice of forum was unrelated to the state of New Jersey's preference for any appeal being heard in this Circuit, rather than in the Third Circuit.

The district court consolidated this case with *Doe v. Trump*, 2025 U.S. Dist. LEXIS 27523 (D. Ma. 2025) ("*Doe*"). On February 13, 2025, the district court issued a preliminary injunction, and on February 26, 2025, denied a stay of its injunction. On appeal, these *amici* had filed an *amicus* brief in this Court in support of the government's motion for stay. *See New Jersey v. Trump*, First Circuit No. 25-1170, [Brief *Amicus Curiae* of America's Future, *et al.*](Mar. 4, 2025). These *amici* also filed an *amicus* brief in support of the Government's still pending motion for partial stay in the U.S. Supreme Court. *Trump v. CASA,* Nos.

2

24A884, 24A885, and 24A886, Brief *Amicus Curiae* of America's Future, *et al.*
(Mar. 28, 2025). These *amici* also filed *amicus* briefs in two other district court
challenges (New Hampshire; Western District of Washington) and appeals in two
other courts of appeals (Fourth and Ninth Circuits).

## STATEMENT

The district court has decreed that the mere occurrence of a birth on U.S.
soil results in the child receiving automatic citizenship under all circumstances
save three. The district court never really explained the rationale for these three
discrete exceptions, except that they were asserted in *United States v. Wong Kim
Ark*, 169 U.S. 649 (1898). The district court's opinion describes the Citizenship
Clause as speaking in "plain and simple terms," none of which "mention the
person's parents at all, let alone expressly condition its grant of citizenship on any
characteristics of the parents" and thus asserted that the EO is not supported by the
text. Further, to know the meaning of the critical text "subject to the jurisdiction
thereof," the court asserted it "need look no further than *United States v. Wong
Kim Ark*...." *Doe* at *25 (emphasis added). Believing the matter to have been
fully addressed and decided long ago, and then reaffirmed repeatedly (based on
citations to other cases which never examined first principles), it concluded that

3

*Wong Kim Ark* "leaves no room for the defendants' proposed reading of the Citizenship Clause." *Id.* at *27.

However, this is no routine case, as automatically conferring citizenship as a free gift to virtually anyone born on U.S. soil without any return expectation of allegiance to our country, undermines the very essence of citizenship. Only a small minority of the nations of the world give away citizenship in this cavalier manner.[3] Giving away citizenship also changes the nature of our country as it empowers persons with primary allegiance to other nations to vote to elect our nation's leaders, which is one reason some would hope courts will avoid any meaningful reexamination of the merits of this challenge.[4] The very fact that the American People twice elected President Donald Trump on a platform that included challenging the fallacy of Birthright Citizenship should cause courts to address this issue thoughtfully, rather than reflexively to dismiss a challenge to "what everyone knows."

When matters of liberal dogma are challenged, they can be expected to be resisted by the establishment which came to power based on these assumptions.

---

[3] *See* Countries with Birthright Citizenship 2025, *World Population Review*.

[4] *See* D. Cole, *et al.*, "24 Democratic states and cities sue over Trump's bid to end birthright citizenship," *CNN* (Jan. 21, 2025).

The President was elected to reflect a different view of government.  In such circumstances, the federal judiciary has a high duty to take such challenges seriously, rather than to react reflexively, against the policies of this President. This concern is not theoretical, as the Trump Administration has been subjected to at least **79 district court injunctions**.  **Of these, about three-quarters, or 57, were issued by judges appointed by Presidents Clinton (9), Obama (24) and Biden (24)**.  *See* Appendix.  To be sure, there was sophisticated judge shopping, and certain challenges were dropped once they were assigned to Republican President appointed judges.[5]  Nevertheless, it appears that many federal judges are using their equitable powers to impede the very agenda that President Trump was elected to implement.

This *amicus* brief supports the proposition that "what everyone knows" about Birthright Citizenship has been and remains fundamentally wrong, and that for a court to assume that prior courts got it right leads to a perpetuation of error

---

[5]  *See, e.g.,* in this case, the State of New Jersey brought its challenge to the President's Birthright Citizenship Executive Order not in New Jersey (where appeal would be to the Third Circuit), but in Massachusetts (where appeal is to this Court);  a challenge to the Birthright Citizenship Executive Order brought in USDC-DC was not pursued aggressively after that case assigned to Trump-appointed Judge Trevor McFadden (*OCA-Asian Pacific American Advocates v. Rubio*, 1:25-cv-00287).

and a continuing violation of the U.S. Constitution.  It also leads to the

undermining of confidence in the rulings of the judiciary.

## ARGUMENT

## I.    THE DECISION BELOW WAS BASED ON LEGAL ERRORS.

The ultimate decision of the court below was consistent with the view

taught in law school attended by lawyers and judges.  However, that view is

fundamentally wrong on the law as to virtually every point.  There was a time that

*Dred Scott v. Sandford*[6] was considered good law, and so also was *Korematsu v.*

*United States*,[7] and more recently *Roe v. Wade*.[8]  This is a time not to reflect on

what was once the prevailing teaching by law professors, but for this Court to

engage the issues and seriously re-examine what is assumed to be true.

First, the court below assumed that the **text** resolves the legal issue without

any more analysis:

> Each of the defendants' theories focuses on the parents, rather than
> the child whose citizenship is at stake.  In so doing, these
> interpretations **stray from the text** of the Citizenship Clause.  [*Doe* at
> *12 (emphasis added).]

---

[6]  60 U.S. 393 (1857).

[7]  323 U.S. 214 (1944).

[8]  410 U.S. 113 (1973).

6

The relevant text states: "All persons born or naturalized in the United States, **and subject to the jurisdiction thereof**, are citizens of the United States and of the State wherein they reside." Fourteenth Amendment, Sec. 1 (emphasis added). The district court did not actually deal with the text, but simply adopted what it thought was the Supreme Court's view in *United States v. Wong Kim Ark*, 169 U.S. 649 (1898), which the district court characterized as:

> the Supreme Court concluded that "subject to the jurisdiction thereof" was meant "to exclude, by the fewest and fittest words," the following categories of persons: "children of members of the Indian tribes," "children born of alien enemies in hostile occupation, and children of diplomatic representatives of a foreign state." [*Doe* at *26-27.]

The district court never addressed why these three categories of persons would not be U.S. Citizens according to the text. Does it matter that the illegal alien and temporary visitor parents are always citizens of other countries? Does a person become "subject to the jurisdiction thereof" simply by being subject to arrest for the commission of a crime? Such an interpretation renders the key phrase a nullity, except for three narrow exceptions read into the text. According to plaintiffs' rule, children born to those working in foreign embassies who do not have diplomatic immunity are U.S. Citizens. What about those born to a woman who is from and a citizen of a nation on our State Department's list of State

Sponsors of Terrorism[9] (Cuba, North Korea, Iran, and Syria) or others like Russia or China, who are not here "in hostile occupation"?  Indeed, as of this date, are there any children at all born who would not be citizens under the district court's "hostile occupation" test?  With all these unanswered questions, what is the validity of the contention that the text resolves the issue for the Plaintiffs?

Second, the district court stated:

> In a lengthy 1898 decision, the **Supreme Court** examined the Citizenship Clause, **adopting** the interpretation the plaintiffs advance and rejecting the interpretation expressed in the EO.  [*Doe* at *10 (emphasis added).]

However, the *Wong Kim Ark* decision did not in any way decide the issue presented here, and on the issues it actually addressed, it was fundamentally flawed.  Consider the several cases decided during that timeframe.  In 1873, just five years after ratification of the Fourteenth Amendment, this Court interpreted the Citizenship Clause consistent with the EO:

> That its main purpose was to establish the citizenship of the negro can admit of no doubt.  The phrase, "**subject to its jurisdiction**" was intended to **exclude** from its operation children of ministers, consuls, and **citizens or subjects of foreign States born within the United States**.  [*Slaughter-House Cases*, 83 U.S. 36, 73 (1873) (emphasis added).]

---

[9] *See* https://www.state.gov/state-sponsors-of-terrorism/.

8

Two years later, the Court again questioned acquiring citizenship, focusing on British citizenship:

> At **common-law**, ... it was never doubted that all children born in a country of parents who were its citizens became themselves, upon their birth, citizens also.  These were natives, or natural-born citizens, as distinguished from aliens or foreigners.  **Some authorities go further** and include as citizens children born within the jurisdiction without reference to the citizenship of their parents.  **As to this class there have been doubts**....  [*Minor v. Happersett*, 88 U.S. 162, 167-68 (1875) (emphasis added).]

Just 14 years before *Wong Kim Ark*, writing for the Court, Justice Gray had highlighted the critical difference between the children of citizens and the children of aliens owing allegiance to foreign powers.  This Court declared:

> [t]he main object of the opening sentence of the Fourteenth Amendment was to settle the question ... as to the citizenship of free Negroes ... and to put it beyond doubt that all persons, white or black, and whether formerly slaves or not, born or naturalized in the United States, and **owing no allegiance to any alien power**, should be citizens of the United States....  [*Elk v. Wilkins*, 112 U.S. 94, 101 (1884) (emphasis added).]

Because the plaintiff in *Elk v. Wilkins* was a member of a Native American tribe to which he owed allegiance, and had never been naturalized, the Court found that he was **not a citizen** despite being born on U.S. soil.  Should *Wong Kim Ark* be read to have overruled these cases?

Despite some unduly broad dicta, *Wong Kim Ark* did not even address those specific children covered by the EO — those born to a mother either **illegally or**

**temporarily present** in the United States.  The question addressed in *Wong Kim Ark* was:

> whether a child born in the United States, of parents of [foreign] descent, who, at the time of his birth, are subjects of [a foreign government], but have a **permanent domicil** and residence in the United States, and are there carrying on business, and are not employed in any diplomatic or official capacity under the [foreign government], becomes at the time of his birth a citizen of the United States.  [*Wong Kim Ark* at 653 (emphasis added).]

However, if *Wong Kim Ark* viewed that "subject to the jurisdiction" of the United States simply meant to be present "within the jurisdiction" thereof, equating (i) children born to aliens who owe allegiance to foreign governments to (ii) children of citizens, then that decision was in error, an outlier, inconsistent with this Court's decisions in the *Slaughter-House Cases, Minor,* and *Elk.*

Third, the district court assumed that *Wong Kim Ark* was later validated by the courts and Congress, stating:

> The rule and reasoning from that decision were reiterated and applied in later decisions, adopted by Congress as a matter of federal statutory law in 1940....  [*Doe* at *10.]

There is no reason to believe that, when Congress enacted a law which used the same words as the Fourteenth Amendment, it was ratifying a decision of this Court which did not resolve the issue, and certainly did not equate the Citizenship Clause's commandment with a mistaken reading of *Wong Kim Ark*, rather than the

Clause itself.  As this Court noted in its denial of the government's motion for stay, "the parties both agree that 8 U.S.C. § 1401 and the Citizenship Clause of the Fourteenth Amendment are 'coterminous.'"  *New Jersey v. Trump*, 2025 U.S. App. LEXIS 5580, *7 n.5 (1st Cir. 2025).  Thus, the INA simply incorporates that Amendment and the cases cited above, but not Plaintiffs' mistaken reading of *Wong Kim Ark*.

Fourth, the district court below demonstrated a fundamental misunderstanding of citizenship in finding that allegiance and parentage are irrelevant:  "First, allegiance in the United States arises from the fact of birth.  It does not depend on the status of a child's parents...."  *Doe* at *10.  The Massachusetts District Court's position is identical to the common-law principle of *jus soli*, but that common law is completely inapplicable, as it was developed under the British view of "subjectship," not the American view of citizenship.  In *Wong Kim Ark*, Justice Gray accurately described the English common law's presumption that everyone born on English soil was a subject of the King for life, whether he wished to be or not.  "By the common law of England, every person born within the dominions of the Crown, no matter whether of English or of foreign parents, and, in the latter case, whether the parents were settled, or merely

11

temporarily sojourning, in the country, was an English subject." *Wong Kim Ark* at 657.

Justice Gray incorrectly assumed the British rule of citizenship that he described also applied in America when it does not. As Justice Story explained in 1829, "The common law of England is not to be taken in all respects to be that of America. Our ancestors brought with them its general principles, and claimed it as their birthright; but they brought with them and adopted only that portion which was applicable to their situation." *Van Ness v. Pacard*, 27 U.S. 137, 144 (1829).

This distinction between British and American citizenship was addressed in an article originally published in January 2001, now updated and published by America's Future. It explained that the legal principle of *jus soli* was based on the idea that the king owned the land, and thus anyone born on the land, whether to a citizen or an alien, became by birth a subject of the king, to whom that person now owed allegiance for life, being permanently a subject by birth on the king's land.[10]

The shift to the American notion of citizenship occurred when our forefathers declared their land and persons "Absolved from all Allegiance to the British Crown" in 1776, the Framers expressly rejected the notion of being unalterably subjects by birth: "The Declaration of Independence is not just a

---

[10] W. Olson & J. Tuomala, "Citizenship by Accident of Birth: the Bogus Theory of Birthright Citizenship," *America's Future* (Mar. 2025).

thorough repudiation of that old feudal idea of 'permanent allegiance' [to the king by accident of birth], but perhaps the most eloquent repudiation of it ever written....  The notion that the English common law of *jus soli* therefore continued unabated after the Declaration of Independence could not be more mistaken."[11]

Actually, citizenship carries a **reciprocal duty of protection**.  Only those persons who can be expected to have a "**permanent allegiance**" to our country can become citizens, because only on that permanent allegiance does the country's reciprocal duty of protection arise.  No such relationship exists with the two classes of persons addressed by the EO:

> By **allegiance** is meant the obligation of **fidelity and obedience** which the individual owes to the government under which he lives, or to his sovereign in return for the protection he receives.  It may be an absolute and permanent obligation, or it may be a qualified and temporary one.  The citizen or subject owes an **absolute and permanent allegiance** to his government or sovereign, or at least until, by some open and distinct act, he renounces it and becomes a citizen or subject of another government or another sovereign.  The alien, whilst domiciled in the country, owes a **local and temporary allegiance**, which continues during the period of his residence. [*Carlisle v. United States*, 83 U.S. 147, 154 (1873) (emphasis added).]

These and other flaws with the extreme theory advanced by Plaintiffs and adopted by the court below that everyone born on U.S. soil — but for two tiny

---

[11] J. Eastman, "The Significance of 'Domicile' in *Wong Kim Ark*," 22 CHAP. L. REV. 301, 308-09 (Spring 2019).

exceptions which might cover an infinitesimal fraction of 1 percent of births

covered by the EO — are U.S. citizens are discussed in the following sections.

## II. THE DISTRICT COURT'S ASSERTION THAT PLAINTIFFS' VIEW OF *WONG KIM ARK* HAS BEEN APPLIED REPEATEDLY IS ERRONEOUS.

The district court flatly asserted that *Wong Kim Ark's* "straightforward rule

and limited exceptions" has been "applied repeatedly and without hesitation...."

*Doe* at \*30.  The snippets of cases provided by the district court could give the

impression that *Wong Kim Ark* has been repeatedly re-affirmed, but these cases

demonstrate little more than the existence of a long neglected, and thus

longstanding error which must be reviewed afresh and corrected.  Nevertheless,

one of these cases deserves comment.

*Immigration & Naturalization Serv. v. Rios-Pineda*, 471 U.S. 444 (1985)

helpfully demonstrates the illogical consequences of Birthright Citizenship, as a

married couple paid a smuggler to get them into the country, after which a baby

was born for whom citizenship was assumed.  This illustrates how alien parents

misuse the citizenship of their child to  avoid deportation.  Nevertheless, the Court

affirmed a deportation order.

The district court heavily relied on an argument made by James Madison

supporting the seating of a House member, but entirely missed the importance of

of allegiance to citizenship stressed by Madison.  *See* J. Madison, "Citizenship" (May 22, 1789); *Doe* at \*36-37.  There being no state or federal law on point, Madison correctly resorted to "principles of a general nature."[12]  Understanding the Fourteenth Amendment's Citizenship Clause requires examination of such principles as well as the purpose for which the amendment was adopted.  The Clause's purpose was to affirm that newly freed slaves were American citizens.  Nothing in that Amendment evidenced a desire to cheapen citizenship by giving it away wholesale to the children of foreign transients and illegal aliens.

The general principle of law to which Madison appealed is that **allegiance** is the primary determinant of citizenship — invoking that term no fewer than **18 times**.  Madison said that "birth is a criterion of allegiance."  Birth, which is one criterion, "derives its force sometimes from place and sometimes from parentage."  Although Madison stated that "in general place is the most certain," the importance of place is more than a bare geographical location, as place is an attribute of the connection of the individual to the social compact that creates a political society.  Madison explained Smith's claim to birthright citizenship was not an automatic entitlement, but one tied to his parents and his ancestors who "were among the first settlers" of South Carolina.  Madison explained the

---

[12]  *See* Jeffrey C. Tuomala, "*Marbury v. Madison and the Foundation of Law*," 4 LIBERTY U. L. REV. 297, 303-25 (Spring 2010).

Declaration of Independence caused a "dissolution of their allegiance" to England, transferring it to the United States.

Societal and governmental allegiance is in large measure inculcated by the society at the place in which one lives, and perhaps most importantly by the child's parents, ancestors, and extended family who bear allegiance to the society and its government. Parents who enter the country illegally or temporarily to game the system to obtain a birth certificate for their child, or welfare benefits for themselves, give no evidence of allegiance or desire to shoulder the responsibilities of citizenship. Children of such foreigners are unlikely to engender the kind of allegiance expected of fellow citizens. Further, because most countries base citizenship on *jus sanguinis*, birthright citizenship banned by the EO almost always results in dual citizenship with divided loyalty best illustrated when those two countries go to war, as illustrated by one of the cases cited by the district court. *See Kawakita v. United States*, 343 U.S. 717 (1952).

## III.  "BIRTHRIGHT CITIZENSHIP" VIOLATES THE TEXT AND THE ORIGINAL INTENT OF THE FOURTEENTH AMENDMENT.

The court below gave little consideration to the views of the Framers of the Fourteenth Amendment but rather cited to case law. Following the Civil War, Congress took action to overrule *Dred Scott*, which held that slaves and their descendants, even as freedmen, were excluded from U.S. citizenship. Congress

first moved to override *Dred Scott* by enacting the **Civil Rights Act of 1866**, which provided that "all persons born in the United States and **not subject to any foreign power**, excluding Indians not taxed, are hereby declared to be **citizens** of the United States."  14 *Stat*. 27 (emphasis added).

Due to concerns that the Supreme Court might rule the Civil Rights Act unconstitutional or that a subsequent Congress might repeal the Act, Congress initiated the process required to amend the Constitution.  *See* Raoul Berger, Government by the Judiciary: The Transformation of the Fourteenth Amendment at 48 (Liberty Fund: 1997).  The resulting Fourteenth Amendment included this language:

> Section 1.  All persons born or naturalized in the United States, and **subject to the jurisdiction thereof**, are citizens of the United States and of the State wherein they reside....  No State shall ... deny to any person **within its jurisdiction** the equal protection of the laws. [Emphasis added.]

The language "**subject to the jurisdiction thereof**" in the Fourteenth Amendment was understood as conveying the same meaning as the language "**and not subject to any foreign power**" as used in the Civil Rights Act of 1866.  Most countries claim as citizens those children born to parents who are their citizens.  Consequently, even if born on American soil, those children are **subjects of a foreign power** and thus **not subject to the jurisdiction of the United States**.

17

That being the case, children born in the United States of parents who are not U.S. citizens have no lawful claim of citizenship simply because they are born in U.S. territory.

The Declaration of Independence not only freed the new country from the notion that persons born in America were British citizens with allegiance to England, but it also demonstrated the solemn, binding, and covenantal action undertaken on behalf of the people, which was later confirmed by the People's ratification of the Constitution which begins "We the People."

> We, therefore, the Representatives of the united States of America, in General Congress, Assembled, **appealing to the Supreme Judge of the world for the rectitude of our intentions**, do, in the Name, and by Authority of the good People of these Colonies, solemnly publish and declare, That these United Colonies are, and of Right ought to be **Free and Independent States**; that they are **Absolved from all Allegiance to the British Crown**, and that all political connection between them and the State of Great Britain, is and ought to be totally dissolved…. [Declaration of Independence (emphasis added).]

The Declaration of Independence declared that Americans were shifting from their previous "**allegiance to the British Crown**" to allegiance to the new nation formed of "**Free and Independent States**."  Likewise, the ratification history of the Fourteenth Amendment, discussed in Section III, *infra*, demonstrates that "**subject to the jurisdiction**" entails an obligation of allegiance to the United States and not simply an obligation of obedience to the laws of the United States.

18

The **obligation of allegiance** signified in the Citizenship Clause is different in kind from the obligation of every person in the territory of the United States to obey the laws of the land.

Citizens subject to the jurisdiction of the United States are entitled to corresponding privileges and immunities of citizenship. *See* Art. IV, Sec. 2, cl. 1. On the other hand, all persons who "come within its jurisdiction" have a duty to obey the law, together with a corresponding right to the equal protection of the law. The meaning of the phrase "subject to the jurisdiction" as used in the Fourteenth Amendment context is very different from the meaning of "within its jurisdiction."

Congress's deliberations on the Fourteenth Amendment revealed the limited objective for which the Citizenship Clause was adopted — to reverse *Dred Scott* and to ensure that the citizenship of freedmen was recognized on the same basis as other Americans born in the United States. The purpose was not to change the law regarding citizenship, but rather to affirm its proper understanding. The deliberations addressed the issue of children born in the United States to non-citizens and assumed that they did not qualify as natural born citizens. It was understood by the Framers that the best evidence that a person will bear true faith and allegiance to America is birth in the United States to American parents.

19

Senator Jacob Howard of Michigan, who authored the Citizenship Clause,

explained its meaning:

> This … is simply declaratory of what I regard as the law of the land
> already, that every person born within the limits of the United States,
> and subject to their jurisdiction, is by virtue of natural law and
> national law a citizen of the United States.  **This will not, of course,
> include persons born in the United States who are foreigners,
> aliens**, who belong to the families of embassadors or foreign
> ministers accredited to the Government of the United States, but will
> include every other class of persons.  [Congressional Globe, 39th
> Cong., 1st Sess., 2890 (emphasis added).]

Senator Howard also explained what he meant by use of the term "jurisdiction":

> "jurisdiction," as here employed, ought to be construed so as to imply
> a **full and complete jurisdiction** on the part of the United States ...
> that is to say, the **same jurisdiction in extent and quality** as applies
> to every citizen of the United States now.  [*Id*. at 2895 (emphasis
> added).]

Senator Lyman Trumbull of Illinois, Chairman of the Senate Judiciary Committee,

concurred with Senator Howard regarding his characterization of the meaning of

"jurisdiction":

> That means "subject to the complete jurisdiction thereof"....  **Not
> owing allegiance to anybody else**.  That is what it means....  It
> cannot be said of any [person] who owes allegiance, partial allegiance
> if you please, to some other Government that he is "subject to the
> jurisdiction of the United States…."
> It is only those persons who come completely within our jurisdiction,
> who are subject to our laws, that we think of making citizens; and
> there can be no objection to the proposition that such persons should
> be citizens.  [*Id*. at 2893 (emphasis added).]

20

Senator George Williams of Oregon concurred:

> In one sense, all persons born within the geographical limits of the United States are subject to the jurisdiction of the United States, but they are not subject to the jurisdiction of the United States in every sense.... I understand the words here, "subject to the jurisdiction of the United States," to mean fully and completely subject to the jurisdiction of the United States. [*Id*. at 2897.]

Senator Edgar Cowan of Pennsylvania specifically expressed concern that the amendment should not be interpreted to grant citizenship to Chinese immigrant workers in California and went on to discuss the rights of travelers in the United States from foreign nations:

> If a **traveler** comes here from Ethiopia, from Australia, or from Great Britain, he is entitled, to a certain extent, to the protection of the laws. You cannot murder him with impunity. It is murder to kill him, the same as it is to kill another man. You cannot commit an assault and battery on him, I apprehend. He has a right to the protection of the laws; but he is **not a citizen** in the ordinary acceptation of the word. [*Id*. at 2890 (emphasis added).]

Before the debate on Senator Howard's proposal to add the qualifying phrase "subject to the jurisdiction thereof," Senator Saulsbury concisely stated the Senate's object with regard to this amendment, and in so doing, removed all doubt as to the limited purpose of the amendment as drafted:

> I do not presume that any one will pretend to disguise the fact that the object of this first section is simply to declare that negroes shall be citizens of the United States. [*Id.* at 2897.]

21

## IV.   THE VIEW THAT "BIRTHRIGHT CITIZENSHIP" SHOULD BE HANDED OUT IRRESPECTIVE OF ALLEGIANCE HAS BIZARRE RESULTS.

The preliminary injunction issued in these cases omitted discussion of one of the most important aspects of Citizenship — the **allegiance** that a person owes to his own country, sometimes described as loyalty or fidelity to the nation.  Most countries recognize citizenship based on the principle of *jus sanguinis* — that a child acquires the citizenship of the child's natural parents.  *See* Edward J. Erler, The Founders on Citizenship and Immigration (Claremont Inst: 2007) at 28-29. Thus, children born anywhere in the world to citizens of most other countries acquire the citizenship of their parents at birth.  Under Respondents' notion of "birthright citizenship" — a term of recent origin that cannot be sourced to the Declaration, Constitution, or statute — almost all such children automatically would be citizens of multiple countries.  To which country do these children owe their allegiance?

The United States has long required naturalized citizens to disavow allegiance to all foreign sovereigns, but not so with those benefitting from "birthright citizenship."  Most children born in the United States to parents with foreign citizenship are recognized as foreign nationals under international law, and not any more "subject to the jurisdiction" of the United States than are the children

22

of diplomats, Native Americans (before the Indian Citizenship Act of 1924), or foreign invaders, who Respondents concede are not citizens.

The importance of allegiance is most acutely felt during times of war when the obligations of citizenship are most consequential. An American citizen is "subject to the jurisdiction" of the United States and may be drafted into the military even if outside the country. Citizens who take up arms against the United States may be prosecuted for treason. *See* Art. III, Sec. 3. Non-citizens who take up arms against the United States are prisoners of war if captured, and they are not subject to prosecution simply for waging war against the United States. A person who is a citizen of two different countries that are at war will be placed in an untenable position. The problems that arise with dual citizenship were acutely felt by U.S. citizens who were impressed into service with the British navy leading up to the War of 1812.

Neither of the two categories of children born to aliens in the United States that are addressed by the EO can be expected to demonstrate allegiance to our nation. First, those children born of parents who are not legally in the United States cannot be expected to be nurtured in the values of American citizenship by parents who entered the country illegally — being here not "subject to" but rather "in defiance of" our nation's laws. Second are those children of birth tourists, who

23

travel to the United States for the purpose of giving birth and thereby obtaining cheap and easy citizenship for their children.  They too are unlikely to have any allegiance to nurture their children in values of American citizenship.

Indeed, as explained *supra*, only those persons who can be expected to have a "**permanent allegiance**" to our country can become citizens, because based on that permanent allegiance, the country then owes to its citizens a reciprocal duty of protection.  But no such relationship can be said to be established with the two classes of persons covered by the EO.

If *Wong Kim Ark* is read to support the preliminary injunction, it contravenes common sense and our sense of justice.  According to the lower court's theory, under *Wong Kim Ark*, a person born in the United States of alien parents is constitutionally entitled to American citizenship, whereas a person born outside the United States to American citizens is entitled to such citizenship only by statute.  Why should there be an irrebuttable legal presumption of allegiance in the former case, but not in the latter?

Under the Plaintiffs' theory of the case and the district court's preliminary injunction, children of the 9/11 hijackers, human traffickers, and enemy combatants captured overseas and held in the United States who are born on U.S.

territory would be entitled to citizenship.[13]  Birth tourism from Turkey, China,

Nigeria, and Mexico has received considerable attention.[14]  The problems

associated with the theory of birthright citizenship are exacerbated by statutes that

facilitate immigration of family members of lawfully naturalized citizens, known

as "chain migration."

## V.    THE CASE AGAINST PRESIDENT TRUMP SHOULD BE DISMISSED.

The New Jersey Plaintiffs named President Trump in his official capacity as

the lead defendant.  Compl. ¶ 68.  The Government's opposition to Plaintiffs'

motion for a preliminary injunction raised the impropriety of seeking relief against

the President (*see* Opposition at 39), and the district court properly did not extend

its injunction against the President.  *See Doe* at *48.  Indeed, the district court was

---

[13] *See, e.g.*, DOJ Office of the Inspector General, "A Review of the FBI's Handling of Intelligence Information Prior to the September 11 Attacks," ch. 5 (Nov. 2004); U.S. Department of Justice, "Two sent to prison for roles in cartel-linked human smuggling scheme" (Oct. 30, 2024); U.S. Department of Justice, "Fact Sheet: Prosecuting and Detaining Terror Suspects in the U.S. Criminal Justice System" (June 9, 2009).

[14] *See, e.g.*, J. Feere, "Birthright Citizenship in the United States: A Global Comparison," *Center for Immigration Studies* (Aug. 31, 2010); I. Egrikavuk, "Birth tourism in U.S. on the rise for Turkish parents," *Hurriyet Daily News* (Mar. 12, 2010); K. Richburg, "For many pregnant Chinese, a U.S. passport for baby remains a powerful lure," *Washington Post* (July 18, 2010); D. Iriekpen, "Citizenship Rights: American Agitations Threaten a Nigerian Practice," *This Day* (Aug. 16, 2010); N. Nnorom, "Birthright citizenship: Nigerians in diaspora kick, say Trump's action illegal," *Vanguard* (Jan. 23, 2025).

correct because it had no jurisdiction to enter an injunction against the President, but left the issue unresolved. This is not a close question, and refusal to address the issue allows the case to continue to be known as *Doe v. Trump*.

In *Franklin v. Massachusetts*, 505 U.S. 788, 803 (1992), the Supreme Court explained that, while a district court could enjoin an executive branch official, it could not enjoin the President himself. In striking down an injunction against a President, the Court bluntly stated that "the District Court's grant of injunctive relief against the President himself is extraordinary, and should have raised judicial eyebrows." *Id*. at 802. Concurring in *Franklin*, Justice Scalia went even further, asserting that "[i]t is a commentary upon the level to which judicial understanding — indeed, even judicial awareness — of the doctrine of separation of powers has fallen, that the District Court entered this order against the President without blinking an eye." *Id*. at 826 (Scalia, J., concurring). Justice Scalia noted that, up until at least 1984, "'[n]o court has ever issued an injunction against the president himself or held him in contempt of court.'" *Id*. at 827 (Scalia, J., concurring).

In 1838, the High Court observed that "[t]he executive power is vested in a President; and as far as his powers are derived from the constitution, he is beyond the reach of any other department, except in the mode prescribed by the

constitution through the impeaching power." *Kendall v. United States*, 37 U.S. 524, 610 (1838).  The specific issue of an injunction against the President was considered by the U.S. Supreme Court in *Mississippi v. Johnson*, 71 U.S. 475 (1867), involving Mississippi's suit to enjoin President Andrew Johnson from enforcing the Reconstruction Acts.  Although leaving open the question of whether the President could be ordered to perform mere ministerial acts, the Court made clear that "this court has no jurisdiction ... to enjoin the President in the performance of his official duties...." *Id.* at 501.

Clearly, President Trump's issuance and enforcement of his Executive Order was an act in the performance of his official duties.  *See Marbury v. Madison*, 5 U.S. 137, 170 (1803) ("The province of the court is, solely, to decide on the rights of individuals, not to enquire how the executive, or executive officers, perform duties in which they have a discretion.  Questions, in their nature political, or which are, by the constitution and laws, submitted to the executive, can never be made in this court.").  *See also Nixon v. Fitzgerald*, 457 U.S. 731, 749 (1982).  For his official acts, the President cannot be subjected to the jurisdiction of the judiciary — which is not a superior, but coequal, branch of government.

## CONCLUSION

For the foregoing reasons, the injunction issued by the district court should

be reversed.

Respectfully submitted,

　　/s/ *William J. Olson*

JEFFREY C. TUOMALA
　114 Creekside Lane
　Winchester, VA  22602

MICHAEL BOOS
　CITIZENS UNITED
　1006 Pennsylvania Ave. SE
　Washington, DC  20003

WILLIAM J. OLSON*
JEREMIAH L. MORGAN
　WILLIAM J. OLSON, P.C.
　370 Maple Avenue West, Suite 4
　Vienna, VA  22180-5615
　(703) 356-5070
*Attorney of Record
*Attorneys for Amici Curiae*
April 28, 2025

28

APPENDIX

**DOE v. TRUMP; NEW JERSEY v. TRUMP**
**Appendix to Amicus Brief.**

**FEDERAL COURT INJUNCTIONS AGAINST**
**THE TRUMP ADMINISTRATION**
(January 20, 2025 through April 28, 2025)

**BIRTHRIGHT CITIZENSHIP**

1. *New Hampshire Indonesian Community Support v. Trump*, No. 1:25-cv-00038 — Judge Joseph N. Laplante (G.W. Bush) of the District of New Hampshire enjoined any enforcement of Trump's birthright citizenship EO within the state.

2. *Washington v. Trump*, No. 2:25-cv-00127 — Judge John C. Coughenour (Reagan) of the District of Washington enjoined any enforcement of Trump's birthright citizenship EO nationwide. The case was appealed to the Ninth Circuit and the Supreme Court, where it is pending.

3. *New Jersey v. Trump; Doe v. Trump*, No. 1:25-cv-10139 — Judge Leo T. Sorokin (Obama) of the District of Massachusetts enjoined any enforcement of Trump's birthright citizenship EO within the state. The case was appealed to the First Circuit and the Supreme Court, where it is pending.

4. *CASA Inc. v. Trump*, No. 8:25-cv-00201 — Judge Deborah L. Boardman (Biden) of the District of Maryland enjoined any enforcement of Trump's birthright citizenship EO nationwide. The case was appealed to the Fourth Circuit and the Supreme Court, where it is pending.

**IMMIGRATION**

5. *J.G.G. v. Trump*, No. 1:25-cv-00766 — Judge James E. Boasberg (Obama) of the District of D.C. ordered flights of gang members and terrorists rerouted back to the United States, and then ordered that Trump cannot deport anyone under the Alien Enemies Act without a hearing. Upheld by D.C. Circuit, and vacated by SCOTUS.

App.1

6. *Chung v. Trump*, No. 1:25-cv-02412 — Judge Naomi R. Buchwald (Clinton) of the Southern District of New York issued a temporary restraining order preventing Trump from deporting a Columbia student for pro-Hamas activism.

7. *Phila. Yearly Meeting of The Religious Soc'y of Friends v. U.S. Dep't of Homeland Sec.*, No. 8:2025-cv-00243 — Judge Theodore D. Chuang (Obama) of the District of Maryland enjoined ICE raids in houses of worship.

8. *M.K. v. Joyce*, No. 1:25-cv-01935 — Judge Jesse M. Furman (Obama) of the Southern District of New York issued a temporary restraining order forbidding the removal of a prisoner from the U.S. to Venezuela until the court could rule on the merits of the removal.  This case was transferred on March 19 as *Khalil v. Joyce*, 2:25-cv-01963 — Judge Michael E. Farbiarz (Biden) of the District of New Jersey ordered on that same day that "Petitioner shall not be removed from the United States unless and until the Court issues a contrary Order."

9. *Parra v. Castro*, No. 1:24-cv-00912 — Judge Kenneth J. Gonzales (Obama) of the District of New Mexico enjoined the transfer of three Venezuelans to Gitmo. They were then removed to their home country instead and voluntarily dismissed their case.

10. *Vizguerra-Ramirez v. Choate*, No. 1:25-cv-00881 — Judge Nina Y. Wang (Biden) of the District of Colorado enjoined the ICE deportation of a Mexican citizen.

11. *National TPS Alliance v. Noem*, No. 3:25-cv-01766 — Judge Edward M. Chen (Obama) of the Northern District of California enjoined ending Temporary Protected Status ("TPS") for 350,000 to 600,000 Venezuelans.

12. *Pacito v. Trump*, No. 2:25-cv-00255 — Judge Jamal N. Whitehead (Biden) of the Western District of Washington granted a nationwide preliminary injunction on February 28 blocking President Trump's Executive Order indefinitely halting entry through the U.S. Refugee Admissions Program (USRAP).  On appeal, the Ninth Circuit partially granted the Trump administration's emergency motion to stay.  On April 3, Plaintiffs filed a motion asking the district court to enforce the first preliminary injunction, and Defendants replied April 8 arguing Plaintiffs' reading of the Ninth Circuit's stay order is too narrow and requesting the court

App.2

hold Plaintiffs' motion in abeyance pending the Ninth Circuit's ruling on their pending appeals.

13. *City and County of San Francisco v. Donald J. Trump*, No. 3:25-cv-01350 — Judge William H. Orrick III (Obama) of the Northern District of California enjoined President Trump's efforts to have the Department of Justice investigate and prosecute "sanctuary cities" policies and government officials interfering with immigration enforcement.

14. *D.V.D. v. U.S. Department of Homeland Security*, No. 1:25-cv-10676 — Judge Brian E. Murphy (Biden) of the District of Massachusetts enjoined sued the Trump administration over the recent policy of deporting noncitizens with final removal orders to a third country, specifically El Salvador, without first providing an opportunity for the contestation of removal.

15. *Isserdasani v. Noem*, No. 3:25-cv-00283 — Judge William Conley (Obama) of the District of Wisconsin, issued a temporary restraining order on April 15 enjoining Secretary Noem from revoking Plaintiffs' student visas.

16. *J.A.V. v. Trump*, No. 1:25-cv-00072 — Judge Fernando Rodriguez (Trump) of the Southern District of Texas temporarily enjoined the Trump administration from deporting Venezuelans outside of the district under the Alien Enemies Act.

17. *G.F.F. v. Trump*, No. 1:25-cv-02886 — Judge Alvin Hellerstein (Clinton) of the Southern District of New York granted a temporary restraining order on April 9 on behalf of a class of all persons in the district subject to deportation under the Alien Enemies Act.

18. *Doe v. Noem*, No. 1:25-cv-10495 — Judge Indira Talwani (Obama) of the District of Massachusetts, on April 14, granted a motion to stay the Department of Homeland Security's blanket revocation of Cuba, Haiti, Nicaragua, and Venezuela parole programs (the "CHNV parole programs") and ordering case-by-case review of any termination of work authorization permits to remain in the United States.

19. *Viloria Aviles v. Trump*, No. 2:25-cv-00611 — Judge Gloria Maria Navarro (Obama) of the District of Nevada issued a preliminary injunction on April 17 prohibiting the government from removing the Petitioner from the United States under the Alien Enemies Act until after his merits hearing.

App.3

20. *D.B.U. v. Trump*, No. 1:25-cv-01163 — Judge Charlotte Sweeney (Biden) of the District of Colorado issued a temporary restraining order on April 22 forbidding the administration from removing Venezuelan illegal aliens from Colorado for deportation under the Aliens Enemies Act.  She will consider a motion for a preliminary injunction on May 3.

21. *A.S.R. v. Trump*, No. 3:25-cv-00113 — Judge Stephanie Haines (Trump) of the Western District of Pennsylvania granted a temporary restraining order on April 25 on behalf of a class of all persons in the district subject to deportation under the Alien Enemies Act that they must be given 14 days' notice and hearing before any removal from the district, pursuant to the Supreme Court's decision in *J.G.G. v. Trump*.

22. *Liu v. Noem*, No. 1:25-cv-00133 — Judge Samantha D. Elliott (Biden) of the District of New Hampshire issued a temporary restraining order on April 10,  later extended through April 29, against the Trump administration's termination of the F1 visa of Xiaotian Liu, a Dartmouth College doctoral student.

23. *Mahdawi v. Trump*, No. 2:25-cv-00389 — Judge Geoffrey W. Crawford (Obama) of the District of Vermont extended a temporary restraining order on April 24 "for a period of 90 days or until dismissal of this case or grant of a preliminary injunction, whichever is earliest ... no respondent... shall remove [Mohsen Mahdawi, a Palestinian] from Vermont without further order from this court."

24. *Yostin Sleiker Gutierrez-Contreras v. Warden Desert View Annex*, No. 5:25-cv-00911 — Judge Sunshine S. Sykes (Biden) of the Central District of California, issued a temporary restraining order on April 16 preventing the government from removing a Venezuelan at risk of being deported to El Salvador under the Alien Enemies Act.  On April 28, the TRO was dissolved since the Plaintiff was in Texas when the petition was filed.

**TRANSGENDER**

25. *Talbott v. Trump*, No. 1:25-cv-00240 — Judge Ana C. Reyes (Biden) of the District of D.C., a lesbian, enjoined Trump's rule preventing "transgender" persons from serving in the military.  The case is on appeal to the D.C. Circuit.

26. *PFLAG v. Trump*, No. 8:25-cv-00337 — Judge Brendan A. Hurson (Biden) of the District of Maryland granted an injunction against Trump's order denying federal funding to institutions performing chemical or surgical "transgender" mutilation on minors.

27. *Washington v. Trump*, No. 2:25-cv-00244 — Judge Lauren J. King (Biden) of the Western District of Washington enjoined Trump's order denying federal funding to institutions performing chemical or surgical "transgender" mutilation on minors.  The case is on appeal to the Ninth Circuit.

28. *Ireland v. Hegseth*, No. 1:25-cv-01918 — Judge Christine P. O'Hearn (Biden) of the District of New Jersey enjoined the Air Force from removing two "transgender" service members pursuant to Trump's order banning "transgender" service members.

29. *Doe v. McHenry; Doe v. Bondi*, No. 1:25-cv-00286 — Judge Royce C. Lamberth (Reagan) of the District of D.C. enjoined the transfer of twelve "transgender women" to men's prisons under Trump's order, and terminating their taxpayer-funded hormone treatments.  The injunction has been appealed to the D.C. Circuit.

30. *Moe v. Trump*, No. 1:25-cv-10195 — Senior Judge George A. O'Toole Jr. (Clinton) of the District of Massachusetts enjoined the transfer of a "transgender woman" to a men's prison under Trump's order.  This case has been transferred to another, unidentified, district.

31. *Jones v. Trump*, No. 1:25-cv-401 — Judge Royce C. Lamberth (Reagan) of the District of D.C. enjoined the transfer of three "transgender women" to men's prisons and termination of their taxpayer-funded hormone treatments under Trump's order.

32. *Shilling v. Trump*, No. 2:25-cv-00241 — Judge Benjamin H. Settle (G.W. Bush) of the Western District of Washington enjoined Trump's order to remove "transgender" service members.  The Ninth Circuit denied a request for a stay of the injunction; Application for Stay filed at the Supreme Court (24A1030).

33. *Maine v. Department of Agriculture*, No. 1:25-cv-00131 — Judge John Woodcock (G.W. Bush) of the District of Maine granted a temporary restraining

order on April 11 on behalf of Maine, in its lawsuit against Trump's federal education funding freeze to Maine for its refusal to ban boys from girls' teams.

## GOVERNMENT OPERATIONS

34. *Dellinger v. Bessent*, No. 1:25-cv-00385 — Judge Amy B. Jackson (Obama) of the District of D.C. issued a restraining order invalidating Trump's firing of U.S. special counsel Hampton Dellinger. The order was upheld by the D.C. Circuit Court of Appeals and the Supreme Court, then was temporarily lifted by the Court of Appeals on March 5; on March 6, Dellinger announced that he was dropping his case.

35. *American Federation of Government Employees, AFL-CIO v. U.S. Office of Personnel Management*, No. 3:25-cv-01780 — Judge William H. Alsup (Clinton) of the Northern District of California enjoined Trump's order for six federal agencies to dismiss thousands of probationary employees. The injunction was upheld by the Ninth Circuit, but the Supreme Court issued a stay based on standing.

36. *Wilcox v. Trump*, No. 1:25-cv-00334 — Judge Beryl A. Howell (Obama) of the District of D.C. enjoined Trump's firing of National Labor Relations Board member Gwynne Wilcox, a Democrat, and ordered her reinstated to finish her term. The D.C. Circuit stayed the injunction, then reinstated it, and an application for a stay has been filed at the Supreme Court, and the district court decision stayed by Chief Justice Roberts.

37. *Harris v. Bessent*, No. 1:25-cv-00412 — Judge Rudolph Contreras (Obama) of the District of D.C. enjoined Trump's firing of Merit Systems Protection Board member Cathy Harris and ordered her reinstated. The D.C. Circuit stayed the injunction, then reinstated it, an application for a stay has been filed at the Supreme Court, and the district court decision stayed by Chief Justice Roberts.

38. *American Foreign Service Association v. Trump*, No. 1:25-cv-00352 — Judge Carl J. Nichols (Trump) of the District of D.C. issued a temporary restraining order against Trump's firing of USAID employees. He later vacated the TRO and denied a preliminary injunction against the firings.

App.6

39. *Does 1-9 v. Department of Justice*, No. 1:25-cv-00325 — Judge Jia M. Cobb (Biden) of the District of D.C. enjoined Trump from releasing the names of any FBI agents who worked on the January 6 investigation.

40. *Doctors for America v. U.S. Office of Personnel Management*, No. 1:25-cv-00322 — Judge John D. Bates (G.W. Bush) of the District of D.C. ordered that CDC and FDA webpages that "inculcate or promote gender ideology" be restored after Trump ordered them removed.

41. *Perkins Coie v. DOJ*, No. 1:25-cv-00716 — Judge Beryl A. Howell (Obama) of the District of D.C. enjoined Trump's directive barring government agencies doing business with Perkins Coie and banning PC attorneys from federal buildings.

42. *Jenner Block v. DOJ*, No. 1:25-cv-00916 — Judge John D. Bates (G.W. Bush) of the District of D.C. enjoined Trump's directive barring government agencies from doing business with Jenner Block and banning that firm's attorneys from federal buildings.

43. *Wilmer Cutler Pickering Hale and Dorr LLP v. Executive Office of the President*, No. 1:25-cv-00917 — Judge Richard J. Leon (G.W. Bush) of the District of D.C. enjoined Trump's directive barring government agencies from doing business with Wilmer and banning that firm's attorneys from federal buildings.

44. *Susman Godfrey LLP v. Executive Office of the President*, No. 1:25-cv-01107 — Judge Loren L. AliKhan (Biden) of the District of D.C. on April 15 enjoined Trump's directive barring government agencies from doing business with Susman Godfrey and banning that firm's attorneys from federal buildings.

45. *American Federation of Government Employees, AFL-CIO v. Ezell*, No. 1:25-cv-10276 — Senior Judge George A. O'Toole Jr. (Clinton) of the District of Massachusetts issued a temporary restraining order against Trump's buyout of federal employees. The judge later lifted the TRO and denied an injunction, allowing the buyout to go forward.

46. *Maryland v. US Dept. of Agriculture*, No. 1:25-cv-00748 — James K. Bredar (Obama) of the District of Maryland issued a TRO ordering 38 agencies to stop

firing employees and reinstate fired employees.  On April 9, the Fourth Circuit stayed the district court injunction, noting the Supreme Court's stay in *AFGE, AFL-CIO v. OPM and Ezell*).

47. *Does 1-26 v. Musk*, No. 8:25-cv-00462 — Judge Theodore D. Chuang (Obama) of the District of Maryland ordered DOGE to reinstate email access for fired USAID employees.

48. *American Federation of Teachers v. Bessent*, No. 8:25-cv-00430 — Judge Deborah L. Boardman (Biden) of the District of Maryland enjoined DOE and Office of Personnel Management from disclosing personal information of employees to DOGE.  On April 7, the Fourth Circuit granted a stay to the Defendants pending the appeal.

49. *American Federation of State, County and Municipal Employees, AFL-CIO v. Social Security Administration*, No. 1:25-cv-00596 — Judge Ellen L. Hollander (Obama) of the District of Maryland granted an injunction forbidding the Social Security Administration from providing personal information to DOGE.  The Fourth Circuit dismissed an appeal for lack jurisdiction.

50. *Brehm v. Marocco*, No. 1:25-cv-00660 — Judge Richard J. Leon (G.W. Bush) of the District of D.C. issued a temporary restraining order forbidding Trump from removing Brehm from, and appointing Marocco to, the U.S. African Development Foundation.

51. *American Oversight v. Hegseth*, No. 1:25-cv-00883 — Judge James E. Boasberg (Obama) of the District of D.C. issued an order "as agreed by the parties," for the government to preserve all Signal communications related to the leak to an *Atlantic* editor of DoD conversations in Houthi strike.

52. *National Treasury Employees Union v. Trump*, No. 1:25-cv-00935 — Judge Paul Friedman (Clinton) of the District of D.C., on April 25, enjoined agencies from implementing Trump's executive order limiting collective bargaining rights for many federal employees, but specifically did not enjoin President Trump.

53. *Woonasquatucket River Watershed Council v. Department of Agriculture*, No. 1:25-cv-00097 — Judge Mary McElroy (Trump) of the District of Rhode Island

issued a preliminary injunction against Trump's federal funding freeze for various departments including the EPA.

54. *Associated Press v. Budowich*, No. 1:25-cv-00532 — Judge Trevor McFadden (Trump) of the District of D.C. on April 8 enjoined the White House from keeping AP reporters out of the White House press briefings until it agrees to refer to the "Gulf of America."

## FUNDING

55. *National Treasury Employees Union v. Vought*, No. 1:25-cv-00381 — Judge Amy B. Jackson (Obama) of the District of D.C. halted Trump's budget cuts and layoffs at the Consumer Financial Protection Bureau.  On March 31, the government appealed Judge Jackson's preliminary injunction order to the D.C. Circuit; which on April 11 ordered a partial stay of the preliminary injunction.

56. *AIDS Vaccine Advocacy Coalition v. Department of State*, No. 1:25-cv-00400 — Judge Amir H. Ali (Biden) of the District of D.C. ordered Trump to unfreeze and spend $2 billion in USAID funds.  The Supreme Court, in a 5-4 ruling with Justices Alito, Thomas, Kavanaugh, and Gorsuch dissenting, left the order in place.  On Apr. 2, defendants appealed Judge Ali's Mar. 10  preliminary injunction order to the D.C. Circuit.

57. *Colorado v. US Dept. of Health and Human Services*, No. 1:25-cv-00121 — Judge Mary S. McElroy (Trump) of the District of Rhode Island, issued a temporary restraining order on April 5 reinstating payments to a coalition of states which sued the Trump administration over the cancellation of $11 billion in public health funding.

58. *National Council of Nonprofits v. OMB*, No. 1:25-cv-00239 — Judge Loren L. AliKhan (Biden) of the District of D.C. blocked Trump's order to pause federal aid while reviewing to determine if it aligned with administration policy.  Appeal to the D.C. Circuit docketed April 25.

59. *Massachusetts v. NIH*, No. 1:25-cv-10338 — Judge Angel Kelley (Biden) of the District of Massachusetts issued a preliminary injunction on March 5 prohibiting implementation of the NIH Guidance "in any form with respect to institutions nationwide."

60. *New York v. Trump*, No. 1:25-cv-00039 — Judge John J. McConnell Jr. (Obama) of the District of Rhode Island enjoined Trump's order to freeze federal spending while reviewing to determine that it aligned with administration policy. The First Circuit, on March 26, denied defendants' motion for a stay pending appeal of the district court's preliminary injunction order.

61. *RFE/RL, Inc. v. Lake*, No. 1:25-cv-00799 — Judge Royce C. Lamberth (Reagan) of the District of D.C. issued a temporary restraining order forbidding Trump from cutting funds to Voice of America.

62. *Widakuswara v. Lake*, No. 1:25-cv-01015 — Judge Royce C. Lamberth (Reagan) of the District of D.C. issued a preliminary injunction on April 22 requiring the reinstatement of employment positions and funding for Voice of America and U.S. Agency for Global Media. The government appealed to the DC Circuit April 24.

63. *Radio Free Asia v. United States of America*, No. 1:25-cv-00907 — Judge Royce C. Lamberth (Reagan) of the District of D.C. issued a preliminary injunction requiring restoration of funding of Radio Free Asia and Middle East Broadcasting Networks on April 25. The government immediately filed an appeal to the D.C. Circuit.

64. *Massachusetts Fair Housing Ctr. v. HUD*, No. 3:25-cv-30041 — Judge Richard G. Stearns (Clinton) of the District of Massachusetts enjoined Trump's cuts to HUD grant funding and ordered spending reinstated.

65. *Climate United Fund v. Citibank, N.A.*, No. 1:25-cv-00698 — Judge Tanya S. Chutkan (Obama) of the District of D.C. issued a temporary restraining order enjoining EPA's Termination of Greenhouse Gas Reduction Fund Grants.

66. *Association of American Medical Colleges v. NIH*, No. 1:25-cv-10340 — Judge Angel Kelley (Biden) of the District of Massachusetts enjoined Trump's NIH grant funding cuts. The Case has been appealed to the First Circuit.

67. *American Association of Colleges for Teacher Education v. McMahon*, No. 1:25-cv-00702 — Judge Julie R. Rubin (Biden) of the District of Maryland issued an injunction requiring reinstatement of terminated education grant funds. Defendants appealed the preliminary injunction to the Fourth Circuit. On April 1,

the Fourth Circuit denied Plaintiffs' motion to place the case in abeyance, and on April 10, granted the defendants' motion for stay pending appeal.

68. *Mayor and City Council of Baltimore et al. v. Vought*, No. 1:25-cv-00458 — Judge Matthew J. Maddox (Biden) of the District of Maryland issued a TRO preventing Trump from defunding the CFPB.

69. *Association of American Universities v. Department of Health and Human Services*, No. 1:25-cv-10346 — Judge Angel Kelley (Biden) of the District of Massachusetts issued a nationwide injunction against Trump's NIH funding cuts. Defendants appealed to the First Circuit on April 9.

70. *Association of American Universities v. Dept. of Energy*, No. 1:25-cv-10912 — Judge Allison D. Burroughs (Obama) of the District of Massachusetts issued a temporary restraining order on April 16 against the cap instituted on reimbursements for indirect costs for federal research grants from the Department of Energy.

## ELECTIONS

71. *League of United Latin American Citizens v. EOP*, No. 1:25-cv-00946 — Judge Colleen Kollar-Kotelly (Clinton) of the District of D.C. granted a universal injunction on April 24 against Executive Order 14,248, requiring documentary proof of United States citizenship to vote in Federal elections. This case consolidates three suits brought by racial minority associations and by Democrat Party, campaigns, and elected officials.

## DEI-RELATED PROGRAMS

72. *Nat'l Ass'n of Diversity Officers in Higher Educ. v. Trump*, No. 1:25-cv-00333 — Judge Adam B. Abelson (Biden) of the District of Maryland enjoined Trump's order blocking federal funding for DEI programs. On March 14, the Fourth Circuit granted the government's motion for a stay of the preliminary injunction pending appeal.

73. *California v. Department of Education*, No. 1:25-cv-10548 — Judge Myong J. Joun (Biden) of the District of Massachusetts granted a temporary restraining order blocking Trump's withdrawal of funds to schools teaching DEI. The First

Circuit denied a motion for stay pending appeal.  On April 4, the Supreme Court granted a stay pending appeal, writing "the Government is likely to succeed in showing the District Court lacked jurisdiction" and that the case may need to be brought in the Court of Federal Claims.

74. *Chicago Women in Trades v. Trump*, No. 1:25-cv-02005 — Senior Judge Matthew F. Kennelly (Clinton) of the Northern District of Illinois entered a temporary restraining order commanding the reinstatement of DEI grants.

75. *Doe 1 v. Office of the Director of National Intelligence*, No. 1:25-cv-00300 — Judge Anthony J. Trenga (G.W. Bush) of the Eastern District of Virginia issued an "administrative stay" against firing DEI employees with CIA and DNI.  The court then considered and rejected imposing a TRO to the same effect.

76. *American Federation of Teachers v. U.S. Department of Education*, No. 1:25-cv-00628 — Judge Stephanie A. Gallagher (Trump) of the District of Maryland enjoined the U.S. Department of Education's February 14, 2025 "Dear Colleague Letter" ending diversity, equity, and inclusion practices in schools by threatening to withhold federal funding from those that refuse to comply.

77. *National Education Association v. US Department of Education*, No. 1:25-cv-00091 — Judge Landya B. McCafferty (Obama) of the District of New Hampshire enjoined the U.S. Department of Education's February 14, 2025 "Dear Colleague Letter" ending diversity, equity, and inclusion practices in schools by threatening to withhold federal funding from those that refuse to comply.

78. *NAACP v. U.S. Department of Education*, No. 1:25-cv-01120 — Judge Dabney L. Friedrich (Trump) of the District of D.C. enjoined the U.S. Department of Education's February 14, 2025 "Dear Colleague Letter" ending diversity, equity, and inclusion practices in schools by threatening to withhold federal funding from those that refuse to comply.

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(a)</u>

IT IS HEREBY CERTIFIED:

1.      That the foregoing Brief *Amicus Curiae* of America's Future, *et al*., in Support of Defendants-Appellants and Reversal contains 6,488 words, excluding the parts of the brief exempted by Rule 32(f).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using WordPerfect version 21.0.0.194 in 14-point Times New Roman.

  /s/ *William J. Olson*   
William J. Olson
Attorney for *Amici Curiae*

**CERTIFICATE OF SERVICE**

IT IS HEREBY CERTIFIED that service of the foregoing Brief *Amicus Curiae* of America's Future, *et al.*, in Support of Defendants-Appellants and Reversal, was made, this 28th day of April, 2025, by the Court's Case Management/Electronic Case Files system upon the attorneys for the parties.

　　/s/ *William J. Olson*　　
William J. Olson
Attorney for *Amici Curiae*